1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARCUS X. McCAULEY,                          No.  2:13-cv-2110 GGH P

12                   Petitioner,

13        v.                                       ORDER

14   RICK HILL,

15                   Respondent.

16

17   INTRODUCTION

18        Petitioner is a state prisoner proceeding in pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.  Pending before the court is respondent's January 6, 2014, motion

20   to dismiss on the grounds that this action is barred by the statute of limitations.  Petitioner has

21   filed an opposition based on statutory and equitable tolling, to which respondent has filed a reply.

22   After reviewing the papers, the court now issues the following order.[1]

23   DISCUSSION

24        Petitioner's claims are:  (1) that his prior "misdemeanor" conviction in 1990 for assault

25   does not constitute a serious or violent felony under Cal. Penal Code §§ 245(a)(1) and 12022.7(a)

26   and was therefore not properly a strike within the meaning of Cal. Penal Code §§ 667(d)(1),

27   ──────────────────

28   [1]   This action is before the undersigned pursuant to the parties' consent to proceed before a
     magistrate judge.  28 U.S.C. § 636(c).

                                                1

1170.12(d) and 1192.7(c); (2) that his trial counsel rendered ineffective assistance by failing to adequately prepare or investigate to establish that petitioner's prior 1990 "misdemeanor" conviction was not a serious felony; and (3) that his appellate counsel was ineffective in failing to raise the claim that the 1990 "misdemeanor" conviction was not a serious felony.

Specifically, petitioner claims that he pled guilty to a misdemeanor charge of assault in 1990, not a felony, and thus there was no evidence presented in *2009* to support the charge there under Cal. Penal Code § 12022.7(a) that he personally inflicted great bodily injury on the victim.

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner was convicted on June 17, 2009, of conspiring to sell cocaine base and selling cocaine base. (Resp't's Lod. Doc. 1.) On July 31, 2009, petitioner was sentenced to a determinate prison term of fourteen years. Id. Petitioner filed a direct appeal which was denied by the Third District Court of Appeal on July 19, 2011. (Resp't's Lod. Doc. 2). Petitioner sought review in the California Supreme Court, but was denied on September 21, 2011. (Resp't's Lod. Docs. 3, 4). Petitioner's first state habeas petition was filed in Sacramento County Superior Court on December 14, 2012 (Resp't's Lod. Doc. 5) and denied on February 1, 2013 (Resp't's Lod.

Doc. 6), in a reasoned decision on the merits.  The second petition was filed in the Third District

Court of Appeal on April 17, 2013 (Resp't's Lod. Doc. 7) and denied in a postcard denial on May

9, 2013 (Resp't's Lod. Doc. 8).  The third and final state court habeas petition was filed in the

California Supreme Court on July 10, 2013 (Resp't's Lod. Doc. 9) and received a postcard denial

on September 18, 2013 ( Resp't's Lod. Doc. 10).  There is no dispute that petitioner's conviction

became final for AEDPA purposes on December 20, 2011.  Petitioner had one year, that is, until

December 20, 2012, to file a timely federal petition, absent applicable tolling.  The instant action,

filed September 30, 2013,[2] is not timely unless petitioner is entitled to statutory or equitable

tolling.  Petitioner opposes the motion, arguing that he is entitled to a later start date of the

---

[2]     Petitioner does not dispute respondent's version of the dates potentially subject to the
mailbox rule.  As a general matter, the court affords petitioner application of the mailbox rule as
to all his habeas filings in state court and in this federal court.  Houston v. Lack, 487 U.S. 266,
275-76, 108 S. Ct. 2379, 101 L.Ed.2d 245 (1988) (pro se prisoner filing is dated from the date
prisoner delivers it to prison authorities); Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir.
2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for
the court within limitations period).

        In this case, however, the petitions filed with the Sacramento County Superior Court and
the California Supreme Court both contain proofs of service signed by someone other than
petitioner, at Represa, California, and therefore presumably a fellow inmate.  Res't's Lod. Docs.
5, 9.)  The proofs of service were signed some days after the petitions were signed by petitioner,
and filed with the respective courts several days later.  Id.  As correctly pointed out by
respondent, the mailbox rule only applies where petitioner delivers the filing to prison authorities
for delivery to the court, not to third parties.  Stillman, 319 F.3d at 1201.  See Rule 3(d) of the
Rules Governing Section 2254 Proceedings ("a paper filed by an inmate confined in an institution
is timely if deposited in the institution's internal mailing system on or before the last day for
filing.  If an institution has a system designed for legal mail, the inmate must use that system to
receive the benefit of this rule.").  See also Chang v. Cate, 2011 WL 1898207, at *1 n. 3 (C.D.
Cal. Apr. 12, 2011) (refusing to apply mailbox rule where prisoner relied on another inmate to
mail his court documents); Hernandez v. Dexter, 2009 WL 112918, at *1 n. 1 (C.D. Cal. Jan. 14,
2009) (declining to extend mailbox rule where prisoner gives documents to fellow inmate for
filing because inmate must himself provide the documents to prison authorities); United States v.
Cicero, 214 F.3d 199, 204-205 (D.C. Cir. 2000) (declining to toll limitations period where
prisoner gave documents to jailhouse lawyer who was placed in administrative segregation,
thereby delaying the filing of his § 2255 motion); Cook v. Stegall, 295 F.3d 517, 521 (6th Cir.
2002) (finding mailbox rule not applicable where inmate sent document to third party outside the
prison for mailing); Morales v. McEwan, 2012 WL 632405, at *5 (C.D. Cal. Jan. 19, 2012)
(finding prisoner outside scope of mailbox rule where he submitted petition to the banking entity
for CSP inmates rather than the CSP Litigation Office as required).  Therefore, petitioner is not
entitled to the benefit of the mailbox rule for these petitions and the filing dates will apply rather
than the dates petitioner signed them.

1  limitations period based on a state created impediment, that statutory and equitable tolling apply,

2  and that he is actually innocent.

3        I.  <u>Delay in Commencement of Limitations Period Due to State Created Impediment</u>

4        In his opposition, petitioner contends that he was prevented from obtaining and reviewing

5  records from his 1990 assault conviction, which he sought from his counsel, Richard Doctoroff,

6  since the inception of the post-conviction appeal process.  (ECF No. 12 at 3.)  He also claims that

7  the Sacramento Police Department, Sacramento County Superior Court and court reporter Kathy

8  Ennis were impediments because they would not provide transcripts from his 1990 prior strike

9  conviction, despite numerous requests. (<u>Id.</u> at 3-6.)

10       Before commencing a discussion of the AEDPA statute of limitations argument, the focus

11 of which revolves about petitioner's argument that he did not have sufficient records to file a

12 timely petition, it is necessary to briefly discuss the documents petitioner does not have or did not

13 get (allegedly) in time to file the appropriate federal petition.  The truth of whether the documents

14 would have made any difference, or indeed, whether they directly contradict petitioner's

15 assertions, are not directly at issue in this limitations motion to dismiss.  However, lest the reader

16 think that the "missing" or "belatedly acquired" documents would have made a dispositive

17 difference, almost, but not all, indications are to the contrary.

18       It is true that we do not have transcripts of the 1990 change of plea or sentencing hearings.

19 These would have been the most important documents about the conviction status.  However, the

20 sentencing minutes are available, and they indicate that petitioner pled to a felony assault and an

21 enhancement of use of force likely to cause great bodily injury.  Cal. Penal Code §§ 245(a)(1),

22 12022.7 (an enhancement that can only be used if the underlying assault is a felony).  ECF 1: 92.[3]

23 The probation report apparently got it wrong in initially having stated that petitioner plead to a

24 battery charge, Cal. Penal Code § 243(d) with the § 245(a)(1) charge dismissed.  ECF 1: 39.

25

26 [3] "Any person who personally inflicts great bodily injury on any person…*in the commission of a felony… shall be punished…"* Section 12022.7 (emphasis added).  Petitioner may mistakenly

27 believe that because the plea agreement called for a one year "lid" in County Jail, ECF 1:92, the plea must have been to a misdemeanor.  However, probationary sentences of one year or less, or

28 even no jail/prison time, may be given for felony convictions.

1    However, it also indicated a "low term" recommendation of 2 years state prison—a felony.  The

2    CLETS report (rap) sheet, a report once removed from actual court records, although difficult to

3    decipher, and giving a date in 1991, is the one document in petitioner's favor which indicates a

4    plea to §245 (a)(1) – a misdemeanor.  ECF 1: 58.  The complaints/information related to the 1990

5    conviction, as well as the preliminary examination, although not indicative of the actual plea,

6    were pled/processed as felonies.  Documents related to the plea at issue here (2009), when

7    relevant at all, relate that petitioner pled to a felony in 1990.  See ECF 1: 78- 83-84.  Petitioner

8    contested the 1990 conviction in state court habeas petitions filed in late 2012 and first decided in

9    2013, not on the basis that he had not actually pled to a felony, but rather on the basis that the

10   evidence did not support the plea.  ECF 1: 132-133.  With this background, the court turns to the

11   AEDPA limitations motion.

12       Under 28 U.S.C. § 2244(d)(1)(B), the statute of limitations may commence from the "date

13   on which the impediment to filing an application created by State action in violation of the

14   Constitution or laws of the United States is removed."  The Ninth Circuit Court of Appeals has

15   determined that this alternate start date applies when the petitioner "show[s] a causal connection

16   between the unlawful impediment and his failure to file a timely habeas petition."  See Bryant v.

17   Arizona Atty. Gen., 499 F.3d 1056, 1060 (9th Cir.2007); see also Gaston v. Palmer, 417 F.3d

18   1030, 1034–35 (9th Cir. 2005), amended by 447 F.3d 1165 (9th Cir. 2006).

19       In the instant case, although the records sought by petitioner may have related to the

20   claims in this petition (even adversely), i.e., that his prior conviction in 1990 for assault does not

21   constitute a serious or violent felony because he pled to a misdemeanor, and he did not personally

22   inflict great bodily injury, and therefore it was not properly a strike, and ineffective assistance of

23   trial and appellate counsel on this basis, it does not appear that petitioner required the state court

24   records from his prior 1990 conviction in order to raise these claims.  Petitioner's lack of access

25   to his 1990 preliminary hearing and sentencing transcripts, and police reports did not prevent him

26   from filing state habeas corpus petitions challenging his convictions.  In fact, petitioner was able

27   to file a total of three separate state habeas petitions without ever having obtained the sentencing

28   transcript and police records, as he was able to eventually obtain only the preliminary hearing

transcripts on August 4, 2012, over seven months after his conviction was final, and prior to filing his first state habeas petition.[4]  (ECF No. 12 at 5.)

Problems associated with obtaining transcripts and trial records do not constitute unlawful or unconstitutional state created impediments.  United States. V. MacCollom, 426 U.S. 317, 324-27, 96 S. Ct. 2086 (1976); United States. V. Van Poyck, 980 F.Supp. 1108, 1111 n. 2 (C.D Cal. 1997); Randolph v. Taylor, 69 Fed. Appx. 824, 825 (9th Cir. 2003).  Even an insufficiency of the evidence claim will not be affected where the petitioner was present at trial and did not show that he needed the transcripts in order to assert this claim.  Mora v. McEwen, 2013 WL 1870747, at *3 (C.D. Cal. Jan. 18, 2013) (declining to find impediment based on lack of transcripts).  See also Lang v. Hernandez, 2008 WL 8114263, at *8 n. 23 (C.D. Cal. Mar. 31, 2008) (assuming arguendo that government unconstitutionally destroyed records, petitioner failed to show impediment prevented him from filing petition, citing Shannon v. Newland, 410 F.3d 1083, 1087-88 (9th Cir. 2005) for proposition that focus is on officials who interfere with inmate's ability to prepare and file petition); Butler v. Virga, 2013 WL 6283497, at *4 (C.D. Cal. Dec. 3, 2013) (finding that Department of Corrections' delay in providing case transcripts did not create impediment because there was no evidence that petitioner was denied access to the courts, or that any illegal conduct by state prevented him from filing the petition).  As respondent points out, the records sought by petitioner were over twenty years old at the time he requested them.

Petitioner has failed to demonstrate that his inability to obtain transcripts in 2012 and 2013 resulted from any unconstitutional state action.  The opposition sets forth petitioner's efforts to obtain records.  Petitioner initially requested the 1989 police report on January 24, 2012, which was denied on February 4, 2012, with instructions to obtain the report.  (ECF No. 12 at 4, Ex. A.) The second request was made on February 9, 2012, and denied on March 8, 2012, with additional instructions to contact the Sacramento Police Department's Court Liaison Division. (Id., Ex. B.) Petitioner's third request, dated April 1, 2012, went unanswered, according to him. (Id., Ex. C.) Preliminary hearing transcripts (which actually show a felony was at issue) were first requested

---

[4]  Petitioner was informed by Kathy Ennis, court reporter, on May 2, 2013, that the remaining records "no longer exist."  (ECF No. 12 at 5 - 6.)

on May 2, 2012 from Sacramento County Superior Court, with no response until after his fourth request, when he received these records on August 4, 2012. (Id. at 4-5, Exs. D-H.)  Petitioner made numerous requests for sentencing transcripts beginning May 2, 2012, but did not receive a response until May 2, 2013, when the court reporter informed him that this record "no longer exists." (Id. at 5-6, Exs. D-L.)  There is no indication in the record that these dispositions were unlawful or unconstitutional, or that they prevented petitioner from filing his federal petition in a timely manner.

Furthermore, as pointed out by respondent, petitioner had numerous records at his disposal prior to filing his state habeas petitions.  In petitioner's own words, he had possession of: "[t]he evidence proffered by the People to prove this strike, prior to petitioner's admission to the alleged prior, consist entirely of a prison prior packet submitted to section 969(b), which contained two abstracts of judgments, fingerprint card, chronological history, a photograph of an individual identified as petitioner, relevant minute orders, change of plea forms certified CII RAP sheet CLETS/CJIS/JIMS printouts." (ECF No. 1 at 12.)  Petitioner claims that his prior conviction does not qualify as a strike because it was a misdemeanor, not a felony, and he did not personally inflict great bodily injury.  This other requested evidence may have been helpful to his claim, but it was not necessary to *present* such a claim, which he was fairly able to do in his state petitions and in the instant federal petition.  See Ramirez v. Yates, 571 F.3d 993, 1000 (9th Cir. 2009) (noting that seeking discovery material which might assist claim does not serve to toll limitations period; refusing to find state impediment unless circumstances "altogether prevented him from presenting his claims in *any* form, to *any* court").

The same holds true for petitioner's sentencing transcript.  Although this record would have revealed the exact charges to which petitioner pled guilty, and whether it was a misdemeanor or a felony, other records were available to petitioner answer this question.  First, the transcript of the proceedings in 2009 in which petitioner's prior convictions were discussed was available and is attached to the petition. (ECF No. 1 at 78-85.)  It sets forth that the 1990 conviction would qualify as a strike. (Id. at 80:17-18.)  Petitioner, through counsel, stipulated to this prior conviction. (Id. at 81-83.)  The court explained that the 1990 conviction was for

1    "assault with force likely to produce great bodily injury and the personal infliction of great bodily

2    injury was found to be true in violation of Section 245(a)(1) and 12022.7(a)" and that it was a

3    strike. (Id. at 83-84.) Additionally, the change of plea forms attached to the petition indicate that

4    petitioner pled guilty to Cal Penal Code § 245(a)(1) and admitted the allegation in § 12022.7 as

5    charged in Count 1 of the information. (Id. at 92, 96.) The information referred to by the change

6    of plea forms describes Count I as a felony. (Id. at 65-68.) It was not necessary that petitioner

7    have access to the sentencing transcript in order to present his claims as the other records

8    provided him with the necessary information, detrimental as it is to petitioner's claim.

9        Additionally, as suggested by respondent, petitioner did obtain his preliminary hearing

10    transcript prior to filing his state habeas petitions, but then declined to attach it to either the state

11    petitions or the instant federal petition, but did finally attach it to his opposition to the motion to

12    dismiss. (Res't's. Lod Docs. 5, 7, 9, ECF Nos. 1, 12 at 35).

13        Respondent asserts that petitioner waited twenty years after he pled guilty to the prior

14    conviction to obtain documents pertaining to this strike, but they were available to him in 1990.

15    This argument is somewhat unpersuasive since the law that made this conviction a strike was not

16    passed until 1994, and petitioner would not have known that he wanted these documents until the

17    strike was used against him in 2009. It was at this time, however, that petitioner could have

18    started seeking official records concerning the 1990 strike, not three years later.

19        Finally, respondent contends that the court reporter who did not provide transcripts to

20    petitioner in 2013 was not acting as a state court employee since her duties in preparing and

21    selling transcripts were as an independent contractor, citing San Bernardino Public Employee's

22    Assn. v. Superior Court, 2007 WL 3015582, at *3 (Oct. 17, 2007). Petitioner outlines his

23    attempts to obtain these transcripts in his opposition, including numerous requests to the court

24    prior to making contact with Kathy Ennis, the court reporter. See ECF No. 12 at 3-6. The court

25    finds it unnecessary to address the issue of whether this court reporter was acting as a state

26    employee or not at the time the transcripts were requested, as the lack of these records did not

27    /////

28    /////

1    prevent petitioner from filing his various state petitions and his federal petition.[5]

2    Therefore, the record belies petitioner's assertion that his lack of access to his sentencing

3    transcripts and police records from his 1990 conviction was a state created impediment causing

4    his untimely filing.[6]  For these reasons, the limitations period properly ran from the date on which

5    the conviction became final.

6         II.  <u>Statutory Tolling</u>

7         Respondent contends that statutory tolling only applies to the first state habeas petition

8    because the statutory period expired seven days after it was denied, and that interval tolling is not

9    available after that time.  Under AEDPA, the period of limitation is tolled while a "properly filed"

10    application for state post-conviction or other collateral review is pending.  28 U.S.C. §

11    2244(d)(2).  Petitions are properly filed so long as there was no unreasonable delay between the

12    petitions, and if each petition is properly filed, then a petitioner is entitled to a tolling of the

13    statute of limitations during the intervals between a lower court decision and the filing of a

14    petition in a higher court during one complete round of appellate review ("interval tolling").  <u>See</u>

15    <u>Evans v. Chavis</u>, 546 U.S. 189, 193–94, 126 S. Ct. 846 (2006).

16         At the time petitioner filed his first state habeas petition on December 14, 2012, 359 days

17    had already passed; however petitioner remained (barely) within the tolling window.  Therefore,

18    fifty days from that December 14 until February 1, 2013, when that petition was denied, were

19    statutorily tolled.  Adding the time remaining after that date, the limitations period expired on

20    February 8, 2013.  Petitioner filed his second state habeas petition on April 17, 2013.  The

21    question is whether interval or gap tolling applies to the time period between the denial of his first

22    state habeas petition and the filing of his second state habeas petition.  Respondent contends that

23

24    [5]  Petitioner's argument that he acted reasonably in assuming that since the preliminary hearing
transcripts were provided to him, he could assume the sentencing transcripts were not far behind,

25    especially since they were from the same era, is not pertinent to this discussion, but will be

26    addressed in the next section on equitable tolling.

[6] Petitioner's argument stands on firmer ground as it relates to equitable tolling, which is

27    discussed <i>infra</i>.  <u>See</u> <u>Ramirez v. Yates</u>, 571 F.3d 993, 1000-01 (9th Cir. 2009) (noting that
petitioner's 28 U.S.C. § 2244(d)(1)(B) claim must satisfy a far higher bar than that required for

28    equitable tolling [although the burden required for equitable tolling is not easy to meet either]).

1   this 74 day interval constitutes unreasonable delay and therefore interval tolling is not available.

2   Respondent is correct in asserting that petitioner is not entitled to statutory tolling for any

3   unreasonable delays during the intervals between the lower courts' decisions and the filing of his

4   subsequent petitions to the appropriate higher courts.  Evans v. Chavis, 546 U.S. 189, 201, 129 S.

5   Ct. 846 (2006).  See also Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir.2010) (115 day delay

6   between habeas filings not entitled to gap tolling because it was "substantially longer than the '30

7   to 60 days' that 'most States' allow for filing petitions, and Chaffer's petitions offered no

8   justification for the delays as required under California law"); Velasquez v. Kirkland, 639 F.3d

9   964, 968 (9th Cir.2011) (unexplained delays of 81 days and 91 days between filings were

10  unreasonable where both petitions were nearly identical); Culver v. Director of Corrections, 450

11  F.Supp.2d 1135, 1140–41 (C.D. Cal. 2006) (unexplained, unjustified delays of 97 and 71 days

12  between the denial of one state petition and the filing of the next petition constituted unreasonable

13  delays such that the intervals cannot be tolled under Chavis); Baptista v. Clark, 2010 WL

14  3893090, at *4 (N.D. Cal. Sept.30, 2010) (finding 83 day delay did not entitle petitioner to

15  interval tolling because it was not adequately justified); Vickers v. Adams, 2009 WL 2579090, at

16  *4 (E.D. Cal. Aug.19, 2009) (holding petitioner not entitled to interval tolling for 67 day period of

17  delay where two petitions were identical); Livermore v. Watson, 556 F.Supp.2d 1112, 1116–20

18  (E.D. Cal. 2008) (no gap tolling for inadequately explained 78 day delay); Stancle v. Clay, 692

19  F.3d 948 (9th Cir. 2012) (82 day delay unreasonable); ); Hunt v. Felker, 2008 WL 364995 (E.D.

20  Cal. Feb. 8, 2008) (70 day delay unreasonable); Bridges v. Runnels, 2007 WL 2695177 *2 (E.D.

21  Cal. Sept.11, 2007) (76 day delay unreasonable).  Compare, Reddick v. Felker, 2008 WL

22  4754812 *3 (E.D. Cal. Oct.29, 2008) (64 day delay not "substantially" greater than sixty days);

23  Payne v. Davis, 2008 WL 941969 *4 (N.D. Cal. Mar. 31, 2008) (63 day delay "well within the

24  'reasonable' delay of thirty to sixty days in Evans" ); Damjanovic v. Sisto, 2009 WL 2151388, *5

25  (C.D. Cal. Jul. 13, 2009) (permitting gap tolling for 70 and 75 day intervals because this time

26  period did not come close to exceeding the six-month delay the Supreme Court found in Evans v.

27  Chavis and because petitioner's explanation of delays, which included clerk's office delay in

28  providing notice of denial of petition, demonstrated that delay not unreasonable);  Osumi v.

1 Giurbino, 445 F.Supp.2d 1152, 1158–59 (C.D. Cal. 2006) (finding that 96 and 98 day delays were

2 not unreasonable "given the lengthy briefs petitioner filed in the California appellate courts and

3 petitioner's substantial rewriting of his habeas corpus petition following the denial of that petition

4 by the Los Angeles Superior Court.").[7]

5          Aside from petitioner's arguments that he was prevented by a state impediment from

6 obtaining state court records, and that he is entitled to equitable tolling because his appellate

7 attorney did not provide transcripts of his prior strike, petitioner argues only generally that he has

8 pursued his case diligently "from the inception of his post-conviction appeal" and "continued to

9 diligently obtain records." (ECF No. 12 at 7.)  He does not provide specific reasons why he

10 delayed 74 days after the denial of his first habeas petition to file his second petition.  More

11 importantly, the first and second state habeas petitions (as well as the third petition to the

12 California Supreme Court) are identical.  (Res't's Lod Docs. 5, 7.)  The face of these petitions

13 provides no apparent reason for the delay.  Therefore gap tolling does not apply, and the

14 limitations period expired on February 8, 2013, during this 74 day period.

15          It is true that petitioner may have thought he needed the sentencing transcript to present his

16 claims, and that the 74 day gap has been viewed by some courts as within the borders of

17 reasonable.  Nevertheless, even if one gives petitioner the benefit of doubt with respect to gap

18 tolling for the entire time from the denial of the Superior Court petition through the time the

19 California Supreme Court denied the last state habeas petition (September 18, 2013), petitioner

20 had only six days left in which to file his federal petition, i.e., until September 24, 2013.  He did

21 not file the federal petition until September 30, 2013, six days past the expiration of the

22 limitations period.  The limitations period expired prior to the time the federal petition was filed.

23          III.  Equitable Tolling

24          A habeas petitioner is entitled to equitable tolling of AEDPA's one-year statute of

25 limitations only if he shows: (1) that he has been pursuing his rights diligently; and (2) that some

26

27 _____

[7] The undersigned reserves any justification analysis based on equitable principles to the section
on equitable tolling.  There is no sense in doing that equitable analysis twice—once in the
28 statutory tolling context, and again for the equitable tolling analysis.

1    extraordinary circumstances stood in his way and prevented timely filing.  See Holland v. Florida,

2    560 U.S. 631, 130 S. Ct. 2549, 2562 (2010); Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).

3    The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum

4    feasible diligence."  See Holland v. Florida, 130 S. Ct. at 2565.  See also Bills v. Clark, 628 F.3d

5    1092, 1096 (9th Cir. 2010).

6         As to the extraordinary circumstances required, the Ninth Circuit has held that the

7    circumstances alleged must make it nearly impossible to file a petition on time, and that the

8    extraordinary circumstances must be the cause of the petitioner's untimeliness.  See Bills v.

9    Clark, 628 F.3d at 1097, citing Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).  This is a

10   very high threshold, "lest the exceptions swallow the rule."  See Miranda v. Castro, 292 F.3d

11   1063, 1066 (9th Cir. 2002).  In addition, '[w]hen external forces, rather than a petitioner's lack of

12   diligence, account for the failure to file a timely claim, equitable tolling may be appropriate.'"

13   Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v.Prunty, 187 F.3d 1104, 1107

14   (9th Cir. 1999).

15        In his opposition, petitioner argues that he is entitled to equitable tolling based on his

16   diligent attempts to obtain records regarding his 1990 conviction from the Sacramento Police

17   Department and Sacramento County Superior Court, as described above, as well as his appellate

18   counsel, Richard Doctoroff.  He also asserts that he was reasonable to delay filing his petition

19   until after he received the preliminary hearing transcripts, relying on the same court to send him

20   the sentencing transcripts which were from the same time period and created later in time than the

21   preliminary hearing transcripts.[8]

22        At first glance, the sentencing transcripts might appear relevant to petitioner's claims

23   because he is arguing that he pled guilty to a misdemeanor rather than a felony, and preliminary

24   hearing transcripts and police records would not reveal the final outcome of the proceedings on

25   those charges as would a sentencing transcript.  But see the court sentencing minutes discussed

26   previously).

27   _____

28   [8]  This argument was made in petitioner's section discussing an alternative start date to the
     limitations period.

1    Moreover, as discussed above, petitioner did not need these records to file a timely federal

2    petition.  Equitable tolling is not warranted for inability to obtain transcripts.  Randolph, 69 Fed.

3    Appx. at 825; Sousa v. Yates, 2010 WL 369299, at *1 (C.D. Cal. Jan. 25, 2010) (noting

4    unpublished Randolph case followed majority approach).

5    Respondent cites United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004), for the

6    proposition that "equitable relief was not appropriate even though the petitioner did not have

7    access to trial transcripts because he had attended his trial and he could have discovered the facts

8    supporting his claims if he had 'at least consult[ed] his own memory of the trial proceedings.'"

9    Reply, at 7.  This summary is not quite accurate.  The court's reasoning in this regard related to

10   its discussion of § 2255(4), whether the limitations period began on a later date due to movant's

11   claim of later discovery of facts supporting his claims.  362 F.3d at 1198.  On the issue of

12   equitable tolling, the court remanded for further development of the record on the issue of

13   whether movant's counsel's delay in providing movant with his "complete set" of legal papers

14   caused delays in movant's ability to file his § 2255 motion.  Id.  The court found no antinomy

15   between its seemingly inconsistent findings on the two issues.  Id. at 1198-99.  Battles, and its

16   reliance on Ford v. Hubbard, 330 F.3d 1086 (9th Cir.2003), reversed on other grounds in Pliler v.

17   Ford, 542 U.S. 1099 (2004), could be read to dictate further development of the record here;

18   however, the record has been adequately developed in this case.

19   Unlike in Battles and Ford, petitioner here was not missing entire case files or dispositive

20   portions of those legal files.[9]  See Farmer v. Biter, 2013 WL 3989447, at *8 (C.D. Cal. Jul. 31,

21   2013 (holding that petitioner failed to show sentencing transcript was necessary to filing federal

22   petition); Sousa, 2010 WL 369299, at *6 n. 9 (petitioner missing trial transcripts but record was

23   sufficiently developed to determine those transcripts not necessary to filing a timely petition);

24   Hammond v. Uribe, 2012 WL 7145705, at *6 (C.D. Cal. Dec. 14, 2012) (same); Robles v.

25   McEwen, 2012 WL 5471111, at *5 (C.D. Cal. Sep. 18, 2012) (lack of trial transcripts alone is

26   insufficient to qualify as extraordinary circumstances to equitably toll statute of limitations);

27   _____

28   [9]  This is not the case where a prisoner is denied access to all of his legal files related to his
     petition.  See Lott v. Mueller, 304 F.3d 918 (9th Cir. 2002).

1    Thibodeaux v. Diaz, 2014 WL 1512226, at *6 (C.D. Cal. Apr. 9, 2014) (finding that where

2    petitioner mailed legal file, including transcripts, to a "trained writ-writer," who never received

3    them, limitations period would not be equitably tolled); Hodge v. Swarthout, 2013 WL 4789737,

4    at *7 (C.D. Cal. Sep. 4, 2013) (finding petitioner did not meet burden to show lack of transcripts

5    prevented him from timely filing petition).[10]   Petitioner in this case was missing only the police

6    report, the preliminary hearing transcript (for only a portion of the time), and the sentencing

7    transcript.  Petitioner had everything else he needed to state a claim.

8         As discussed supra, he had at his disposal the transcript of the 2009 proceedings in which

9    petitioner stipulated to the 1990 conviction and that it would qualify as a strike because it was for

10   assault with force likely to produce great bodily injury and the personal infliction of great bodily

11   injury.  (ECF No. 1 at 78-85.)  This transcript was attached to the petition and demonstrates

12   petitioner and his counsel's understanding of the consequences of admitting the prior convictions.

13   (Id. at 78-85.)  Petitioner also had access to other court records surrounding his earlier conviction,

14   including the sentencing minutes, which reflected his guilty plea to Cal Penal Code § 245(a)(1)

15   with an admission of § 12022.7, as charged  in Count 1, where it is described as a felony.  (Id. at

16   92, 96, 65-68, 98-103.)  Additionally, petitioner had the benefit of counsel's motions and other

17   work product concerning his prior convictions to which he could refer as guidance in the instant

18   petition.  See id. at 105-11  (request for court to dismiss priors pursuant to penal code section

19

20   [10]     Nor is an attorney's failure to return legal files determinative on the issue of equitable
     tolling.  See Sanders v. Tilton, 2009 WL 6903642, at *6 (C.D. Cal. Mar. 19, 2009) (recognizing
21   that equitable tolling may be warranted in some circumstances but attorney's legal files were not
     necessary to petitioner's ability to raise his habeas claims); Williams v. Clark, 2008 WL 474343,
22   at *5 (C.D. Cal. Jan. 3, 2008) (same).

23        To the extent that petitioner contends his counsel unsuccessfully attempted to obtain these
     court records but was unable to do so; see ECF No. 1 at 88; and this was the cause of the delay,
24   this contention fails for the same reasons as does petitioner's own inability to obtain the records.
     But see ECF No. 1 at 31 (petitioner's declaration referring to his phone call with Mr. Doctoroff,
25   informing this appellate counsel of petitioner's attempts to obtain the 1990 conviction records and
     would forward them to counsel if he wished).
26
          To the extent that petitioner claims his counsel was at fault in failing to obtain the records,
27   the facts show only negligence at most, and ordinary negligence is not an extraordinary
     circumstance warranting equitable tolling.  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir.
28   2002).

1   1385, filed by attorney Donald Masuda); id. at 88, 90 (letters to petitioner from appellate counsel

2   Richard Doctoroff).  See also Res't's Lod. Docs. 5, 7, 9, and exhibits.

3          In any event, it is unclear how these records would have helped petitioner to frame his

4   claims more succinctly than he did.  A review of the federal petition indicates that petitioner was

5   able to recount detailed facts of the preliminary hearing proceedings, including the testimony of

6   each witness.[11]  (ECF No. 1 at 9-10.)  He also provided a summary of the events surrounding his

7   change of plea and court records documenting it.  (Id. at 11, 92-97.)  All of these records which

8   did *not* delay petitioner in filing his various habeas petitions were attached to his state and federal

9   petitions, and were sufficient to support and assist him in framing his claims quite succinctly.

10          Even if petitioner believed he needed these additional items, he could have timely filed his

11   habeas petition and then requested to amend when he received these records, or filed a discovery

12   motion, or motion to expand the record to obtain these records, and then amended his petition if

13   necessary.  See Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1014 (9th Cir. 2009) (suggesting

14   filing of a basic form petition to meet deadline, and then seeking amendment of petition when

15   further information is obtained).

16          Furthermore, petitioner has not explained why he did not seek the records from his 1990

17   conviction prior to 2012.  That conviction was used as a strike in his 2009 conviction, and

18   therefore he should have known at that time if he was dissatisfied with the result at his

19   sentencing, that he should seek these records, two to three years earlier than he did.  Although

20   petitioner may have acted diligently once *he* determined he needed these records; (see ECF no. 12

21   at 4-6); on January 24, 2012, just over a month after the limitations period began, these

22   circumstances are not extraordinary.  Petitioner had other records at his disposal to utilize in

23   presenting his claims, which he did in a competent manner; inability to obtain transcripts is not

24   cause for equitable tolling as pointed out by the aforementioned authority; and it is quite

25   [11]  It is true that petitioner may not have been able to provide as much detail about his
26   preliminary hearing without the transcript that he apparently waited several months to receive
       before filing his first state habeas petition; however, the other records attached to his petition,
27   along with his own memory, were sufficient to provide the facts necessary to state a claim.
       Petitioner's delay in waiting for this transcript was not reasonable.  Moreover, nothing in the
28   preliminary hearing supports his assertions herein.

1   understandable and expected that transcripts over twenty years old would no longer be in

2   existence.  Petitioner has the burden to show that he qualifies for equitable tolling, see Miranda v.

3   Castro, 292 F.3d 1063, 1065 (9th Cir. 2002), and in this case he has not made a showing.

4   Petitioner's diligence did not equate to a showing that this extraordinary exclusion should apply

5   to him.

6       Finally, petitioner was able to file three state habeas petitions and the instant federal

7   petition without the benefit of the police records or the sentencing transcript, both of which he

8   never received.  The preliminary hearing transcript, which petitioner received in August, 2012,

9   over seven months after the limitations clock started running, was not essential to his petition, and

10  petitioner has not explained why it was necessary to the preparation of his petition.  Therefore,

11  petitioner is not entitled to equitable tolling.[12]

12      IV.  Actual Innocence

13      Finally, petitioner contends that his otherwise barred claims may be considered based on

14  actual innocence in regard to his 1990 conviction used as a strike to enhance his 2009 conviction.

15      "[A] credible claim of actual innocence constitutes an equitable exception to AEDPA's

16  limitations period, and a petitioner who makes such a showing may pass through the Schlup

17  gateway and have his otherwise time-barred claims heard on the merits."  Lee v. Lampert, 653

18  F.3d 929, 932 (9th Cir. 2011) (en banc).  In order to obtain equitable tolling on this ground,

19  however, petitioner must demonstrate "that it is more likely than not that no reasonable juror

---

[12]   The fact that petitioner was potentially only six days late in filing his federal petition, (if he is given all of the statutory tolling available to him), does not change the result.  See Rouse v. Lee, 339 F.3d 238, 253 (4th Cir. 2003) (finding that petitioner was one day late in filing his petition and holding that "[f]ailure to adhere to the AEDPA's precise filing deadlines, however, even by only a few days late, would make navigating [the] AEDPA's timetable impossible .... Accordingly, we look not to the length of the delay, but to the reasons for delay in determining whether equitable tolling is appropriate."); Lattimore v. Dubois, 311 F.3d 46, 53–54 (1st Cir.2004) (reversing district court's granting of a "grace period" and dismissing habeas petition as untimely when it was submitted one day after the statute of limitations had expired); Lookingbill v. Cockrell, 293 F.3d 256, 265 (5th Cir. 2002) ("We have consistently denied tolling even where the petition was only a few days late"); United States v. Marcello, 212 F.3d 1005, 2010 (7th Cir. 2000) (habeas petition submitted one day late was properly dismissed as untimely under AEDPA); Vigil v. Gipson, No. CV 11–10360 RGK (JCG), 2012 WL 1163633, at *1 (C.D. Cal. Mar.13, 2012) ("While one could perhaps be sympathetic to a one-day delay, this Court is obligated to follow the strict mandates of AEDPA, as many other courts have done in similar circumstances for sound reasons."), report and recommendation adopted by 2012 WL 1163133 (C.D. Cal. Apr. 9, 2012).

1    would have found him guilty beyond a reasonable doubt." Id. at 937. "Actual innocence means

2    factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623,

3    118 S. Ct. 1604, 140 L.Ed.2d 828 (1998). The actual innocence exception applies to a "narrow

4    class of cases implicating a fundamental miscarriage of justice." Lampert, 653 F.3d at 938. The

5    undersigned will assume for the purposes of argument that one can be actually innocent of

6    pleading to a strike enhancement when the enhancement was not true.

7         The habeas petitioner must "support his allegations of constitutional error with new

8    reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness

9    accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

10   Such evidence need not be newly discovered, but only newly presented. Griffin v. Johnson, 350

11   F.3d 956, 961-963 (9th Cir. 2003). The habeas court then "consider[s] all the evidence, old and

12   new, incriminating and exculpatory," admissible at trial or not. House v. Bell, 547 U.S. 518, 538,

13   126 S. Ct. 2064 (2006) (internal quotation marks omitted); see also Carriger v. Stewart, 132 F.3d

14   463, 477–78 (9th Cir. 1997). In considering this evidence, the court "must assess the probative

15   force of the newly presented evidence in connection with the evidence of guilt adduced at trial,"

16   and "may consider how the timing of the submission and the likely credibility of the affiants

17   bears on the probable reliability of that evidence." Schlup, 513 U.S. at 332. Then the habeas

18   court makes a "'probabilistic determination about what reasonable, properly instructed jurors

19   would do.'" House, 547 U.S. at 538, quoting Schlup, 513 U.S. at 329.

20        First, petitioner asserts that he received ineffective assistance of trial counsel who

21   prompted petitioner to admit to the prior serious felony at the eleventh hour, and therefore "the

22   prosecution's case against petitioner that he suffered a serious/violent felony was never tested."

23   Ineffective assistance of counsel does not equate with actual innocence.

24        Second, petitioner claims that newly discovered evidence in the form of a probation

25   report, preliminary hearing transcript, and C.L.E.T.S. report indicate that petitioner's prior

26   conviction under Cal. Penal Code § 245(a)(1) was a misdemeanor, and there is no evidence that

27   petitioner inflicted great bodily injury pursuant to the accompanying § 12022.7(a) admission.

28   Petitioner contends that he need not show he is actually innocent, but must only show that "a

1    court cannot have confidence in the outcome."  (ECF No. 12 at 8.)

2         Petitioner's arguments are unavailing.  He is foreclosed by his guilty plea in the 1990

3    case.  Any claim that he did not personally inflict great bodily injury or that his conviction was a

4    misdemeanor, took place prior to the entry of petitioner's guilty plea to the charges against him.

5    The law is clear that petitioner may not raise claims of deprivation of his constitutional rights that

6    occurred prior to his plea.  "When a criminal defendant has solemnly admitted in open court that

7    he is in fact guilty of the offense with which he is charged, he may not thereafter raise

8    independent claims relating to the deprivation of constitutional rights that occurred prior to the

9    entry of the guilty plea."  Tollett v. Henderson, 411 U.S. 258, 267 (1973).  See also McMann v.

10   Richardson, 397 U.S. 759, 770-71 (1970); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994)

11   ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently

12   seek federal habeas relief on the basis of pre-plea constitutional violations"), overruled on other

13   grounds by Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Ortberg v. Moody, 961 F.2d 135,

14   137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged

15   constitutional violations that occurred prior to the entry of that plea"); Hudson v. Moran, 760 F.2d

16   1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas

17   relief based upon "independent claims" of pre-plea constitutional violations); United States v.

18   DeVaughn, 694 F.3d 1141, 1153 (10th Cir. 2012) ("A guilty plea waives all defenses except those

19   that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims

20   involving the right not to be haled into court.").

21        Petitioner may not now raise claims of constitutional violations, such as lack of evidence

22   that petitioner personally inflicted great bodily injury, and the mischaracterization of this prior

23   conviction as a felony, which may have occurred prior to the entry of his guilty plea.  See Marrow

24   v. United States, 772 F.2d 525, 527 (9th Cir. 1985) (finding that guilty plea precluded

25   consideration of claim concerning legality of confession).

26        Finally, petitioner's bald assertions that he pled guilty to a misdemeanor rather than a

27   felony is belied by all of the court records cited above demonstrating that he pled to a felony,

28   which petitioner had access to when he filed his petitions for collateral review.  It is established

18

1    that bald assertions and conclusory allegations such as petitioner's are insufficient to state a

2    habeas claim. Habeas Rule 2(c); Wacht v. Cardwell, 604 F.2d 1245, 1246–1247 (9th Cir. 1979).

3    The notice pleading standard applicable in ordinary civil proceedings does not apply in habeas

4    corpus cases; rather, Rules 2(c), 4, and 5(b) of the Rules Governing Habeas Corpus Cases in the

5    United States District Courts require a more detailed statement of all grounds for relief and the

6    facts supporting each ground; the petition is expected to state facts that point to a real possibility

7    of constitutional error and show the relationship of the facts to the claim.  Mayle v. Felix, 545

8    U.S. 644, 655 (2005).  Petitioner has not set forth a sufficient plausible factual basis to support his

9    assertions and the court is not required to accept his allegations as true, in light of all of the

10   evidence to the contrary.  See In re Gilead Sciences Securities Litigation, 536 F.3d 1049, 1055

11   (9th Cir. 2008) (In a 12(b)(6) motion, "[t]he court need not, however, accept as true allegations

12   that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required

13   to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

14   unreasonable inferences.") (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th

15   Cir. 2001).  [13]

16   /////

17

18   _____

     [13]       Contrary to respondent's argument, Lackawanna does not apply here.  In Lackawanna v.
     Coss, 532 U.S. 394, 121 S. Ct. 1567, 149 L.Ed.2d 608 (2001), the Supreme Court held that "once
19   a state conviction is no longer open to direct or collateral attack in its own right ... the conviction
     may be regarded as presumptively valid."  Id. at 403.  If such a conviction is later used to enhance
20   a criminal sentence, the enhanced sentence cannot be challenged in federal habeas proceedings
     "on the ground that the prior conviction was unconstitutionally obtained."  Id. at 404.  The
21   Supreme Court has allowed a petitioner to collaterally challenge a prior conviction only "where
     there was a failure to appoint counsel in violation of the Sixth Amendment."  Lackawanna, 532
     U.S. at 404.
22            Here, petitioner (apparently) is not making a sufficiency of the evidence claim regarding
     his 1990 conviction and therefore he is not attacking the facts of that conviction.  Rather, he
23   objects to the characterization of the prior 1990 conviction as a felony rather than a misdemeanor,
     in regard to his 2009 conviction.  Therefore, he is questioning the sufficiency of the evidence only
24   as it pertains to the characterization of the prior conviction as a felony.  As to his claim that he
     personally did not inflict great bodily injury, although at times it appears to attack the facts of the
25   prior conviction, the entire thrust of the petition is that he did not plead to such charges.
              In any event, a retrospective review of the sufficiency of the facts underlying the charges
26   in 1990, is barred on two grounds: (1) he pled guilty to the crime based on those facts, and is
     unable to attack the sufficiency of the facts after his plea was entered.  See Tollett, 411 U.S. at
27   267; (2) if the undersigned is incorrect about the thrust of petitioner's allegations, and he is indeed
     challenging the sufficiency of the evidence regarding especially the section 12022.7
28   enhancement, there is no doubt that Lackawanna bars such a retrospective review as well.

1    Petitioner here has failed to bring forth evidence of his actual innocence.  First, petitioner

2    pled guilty to the 1990 conviction, reducing the chance that he is actually innocent of that charge.

3    (ECF No. 1 at 92, 96-97.)  He admitted to allegations of violating Cal. Penal Code §§ 245(a)(1)

4    and 12022.7, and that he personally inflicted great bodily injury.  He was "convicted of the

5    following *felonies*:"  PC 245(a)(1) and 12022.7, and placed on *felony* probation.  (Id. at 96, 97.)

6    (emphasis added.)  See Cal. Penal Code § 12022.7(a).  In his 2009 proceedings, petitioner

7    admitted to the prior convictions, after the consequences of those admissions were thoroughly

8    explained to him.  (ECF No. 1 at 78-85.)  On appeal, petitioner was examined at hearing

9    regarding his prior convictions and admitted to them, and specifically that he inflicted great

10   bodily injury.  (Res't's Lod. Docs. 11, 12, 13.)  All of these later admissions refute petitioner's

11   contention that he is actually innocent.

12       In regard to petitioner's claim of new evidence, respondent points out that only the

13   C.L.E.T.S. printouts, the preliminary hearing transcript and the complaint[14] were not included in

14   the Clerk's Transcript that were made part of petitioner's 2009 case.  Respondent argues that

15   these remaining items are not new and do not establish actual innocence.  The C.L.E.T.S. report is

16   not new, but was generated on July 24, 2009.  (ECF No. 1 at 54.)  This report does not establish

17   petitioner's actual innocence in regard to a felony but is only a record of criminal dispositions

18   culled from databases in the California Law Enforcement Telecommunication System.  (Id. at 54-

19   63.)  Although the C.L.E.T.S. report does indicate that the status of petitioner's conviction was a

20   misdemeanor, this secondhand report does not sufficiently rebut the firsthand court documents

21   demonstrating that petitioner pled to a felony and was convicted of same.

22       The probation report is dated March 1, 1990, and was presented in petitioner's 2009 case,

23   and is therefore not newly presented evidence.  (ECF 1 at 39-52.)  It is also not a dispositive

24   document and cannot reflect that petitioner was innocent of a felony, but is only a

25   recommendation, and in fact recommends that petitioner be committed to prison for two years for

26

---

27   [14]   Petitioner's opposition lists the new evidence as the C.L.E.T.S. report, the preliminary hearing
     transcript and the probation report.  He does not reference the complaint as newly discovered
28   evidence.  (ECF No. 12 at 8.)

1   the 1990 crime, (Id. at 50.), i.e., probation was recommending a felony sentence—something it

2   would not have done had a misdemeanor (one year maximum) been at issue.

3          Although petitioner did not receive the preliminary hearing transcript until August, 2012,

4   it also fails to indicate petitioner's actual innocence in terms of a felony rather than a

5   misdemeanor, as it provided the probable cause to find petitioner may have been guilty of a

6   felony.  (ECF No. 12 at 35-88.)  In particular, two witnesses testified that petitioner participated

7   in kicking and hitting the victim in the head while he was on the ground.  (Id. at 40, 66-67.)  The

8   victim further testified that he suffered a broken jaw on both sides at the hands of petitioner and

9   his co-defendants.  (Id. at 40.)

10          Not only do the documents referred to by petitioner not constitute new evidence, but they

11   do not come close to meeting Schlup's standard that it is more likely than not that no reasonable

12   juror would have convicted petitioner in light of all the evidence.  Schlup, 513 U.S. at 327.

13   Therefore, the actual innocence exception to the AEDPA one-year statute of limitations does not

14   apply here.

15          The petition should be dismissed as barred by the statute of limitations.

16          Where, as here, the petition was dismissed on procedural grounds, a certificate of

17   appealability "should issue if the prisoner can show: (1) 'that jurists of reason would find it

18   debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of

19   reason would find it debatable whether the petition states a valid claim of the denial of a

20   constitutional right.'"  Morris v. Woodford, 229 F.3d 775, 780 (9th Cir.2000) (quoting Slack v.

21   McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L.Ed.2d 542 (2000)).  The court finds that a

22   certificate of appealability should not issue in this case for the reasons stated herein.

23   CONCLUSION

24          Accordingly, for the reasons stated herein, IT IS HEREBY ORDERED that:

25          1.  Respondent's motion to dismiss, filed January 6, 2014, (ECF No. 8), is granted; and

26   /////

27   /////

28   /////

2.  The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

Dated: August 18, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076/McCa2110.mtd.hc